Claud Allen HOGUE,
Plaintiff–Appellant,
Cross–Appellee,

v.

ROYSE CITY, TEXAS,
Defendant–Appellee,
Cross–Appellant.

No. 90–1037.

United States Court of Appeals,
Fifth Circuit.

Aug. 28, 1991.

Marcos G. Ronquillo, Ronquillo & Castaneda, Dallas, Tex., for plaintiff-appellant cross-appellee.

Ronald Clark and Deborah Sterling Burleson, Henderson, Bryant & Wolfe, Sherman, Tex., for defendant-appellee, cross-appellant.

Before WISDOM, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Claud Hogue (Hogue) appeals a final summary judgment, which was rendered in favor of defendant-appellee Royse City, Texas (the City) on the ground that Hogue's federal claim constituted the same cause of action previously decided in state court and therefore was barred under the doctrine of res judicata. The City cross appeals, alleging that the district court erred in denying attorneys' fees and costs to the City; alternatively, the City seeks damages for a frivolous appeal pursuant to Fed.R.App.P. 38. We affirm the judgment of the district court; however, we deny the City's request for damages.

**Facts and Proceedings Below**

The City hired Hogue as police chief on July 16, 1985. Hogue was 52 years old at the time. Just under a year later, on June 17, 1986, the city council voted unanimously that it lacked confidence in Hogue, pursuant to Texas statute,[1] and accordingly terminated his employment the next day. On June 16, 1988, Hogue simultaneously filed two suits against the City, one each in state and federal court. In his state court suit, Hogue alleged (1) that he was wrongfully discharged; and (2) that the City breached its duty of good faith and fair dealing by refusing him an opportunity to appear before the city council and defend the allegations against him. Hogue's federal court complaint alleged (1) that the City terminated him on the basis of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the ADEA); and (2) that the City wrongfully discharged him because he refused to set speed traps.

1. Section 22.077(b) of the Texas Local Government Code provides that "[i]f the governing body lacks confidence in a municipal officer elected by the governing body, the governing body may remove the officer at any time. The removal is effective only if two-thirds of the elected aldermen vote in favor of a resolution declaring the lack of confidence." Tex.Local Govt.Code Ann. § 22.077(b) (Vernon 1988). The City claims that it was motivated to terminate Hogue because he committed various unbecoming acts, including planting marihuana outside City Hall and "scaring a black citizen with a dead snake."

On April 27, 1989, the state district court entered final judgment on the City's summary judgment motion that Hogue take nothing on both claims. Hogue did not pursue an appeal in the state courts. The City sent a letter to Hogue's attorney asserting that the federal suit was then barred, under res judicata, by the state court judgment, and requesting that Hogue dismiss his federal suit. Hogue, however, decided to continue the suit. The City then filed a motion for summary judgment in the federal district court, alleging res judicata, and also requested sanctions under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.

On October 10, 1989, the federal district court granted summary judgment to the City on the ground of res judicata. Final judgment was entered on October 25, 1989. Hogue filed a motion for new trial on November 3, and, on November 22, filed a notice of appeal on the granting of summary judgment in favor of the City. The City filed its cross appeal on December 11, even though the district court had not yet ruled on Hogue's motion for new trial. On December 14, the district court overruled Hogue's motion for new trial and clarified the final judgment, allowing costs of court to the City, but denying attorneys' fees and costs of defense.

This Court dismissed both Hogue's and the City's appeals on January 9, 1990, for want of jurisdiction because the notices were filed while a motion for new trial was pending, and thus were rendered ineffective. *See Acosta v. Louisiana Dept. of Health & Human Resources*, 478 U.S. 251, 106 S.Ct. 2876, 2877–78, 92 L.Ed.2d 192 (1986) (stating that a notice of appeal is ineffective unless filed after entry of judgment on a Fed.R.Civ.P. 59 motion). Hogue immediately filed a second notice of appeal, which stated that he appealed "from denial of motion for new trial." Hogue also attached a copy of his original notice of appeal as well as a copy of the district court's order of December 14, 1989. The City timely filed its cross appeal on the issue of attorneys' fees, costs, and damages under Fed.R.App.P. 38.

## Discussion

### I. Jurisdiction

■ At the outset, we consider the City's contention that this Court is without jurisdiction because Hogue failed to file a proper notice of appeal from the judgment of the district court. The City alleges that Hogue's notice of appeal, which states that he appeals the denial of his motion for new trial, is fatally defective. The City correctly notes that an order denying a new trial may not be appealed, since the appeal should be taken from the judgment itself. *See State National Bank of El Paso v. United States*, 488 F.2d 890, 893 (5th Cir. 1974), *reh'g denied*, 490 F.2d 992. From that premise, the City concludes that Hogue has not perfected an appeal from a final judgment.

The Supreme Court rejected a similar argument in *State Farm Mutual Auto. Insurance Co. v. Palmer*, 350 U.S. 944, 76 S.Ct. 321, 100 L.Ed. 823 (1956). In a per curiam opinion, the Court reversed the Ninth Circuit, which had dismissed the appeal on the ground that the appellant, in its notice of appeal, had designated the trial court's denial of its motion for new trial rather than the judgment against it. Further, in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962), the Court held that if, from the proceedings on appeal and from the notice of appeal itself, it becomes apparent that the appeal was intended to have been taken from an unspecified judgment, the notice may be construed as bringing up the unspecified order for review.

The force of *Palmer* and *Foman* are not undercut in their applications to this character of case by *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), as we recently explained in *Osterberger v. Relocation Realty Service Corporation*, 921 F.2d 72, 73–74 (5th Cir.1991) ("... every Circuit, including the Fifth, has treated an appeal from an order denying a motion for new trial as an appeal from the adverse judgment itself.... *Torres* has no effect on the long line of cases that have held that an appeal erroneously taken from a denial of a mo-

tion for new trial, rather than from the underlying judgment, should be treated as an appeal from the judgment.")

Here, Hogue's intent to appeal a final judgment was obvious. To his second notice of appeal, Hogue attached a copy of his original notice of appeal and the district court's final order. Taking the two notices and the appeal papers together, we conclude that Hogue's intention to seek review of the summary judgment was manifest. Further, the City was in no way prejudiced, as is evidenced from its detailed brief and argument on the merits of the summary judgment on appeal. Therefore, this Court treats Hogue's attempt to appeal the denial of his motion for new trial as an effective, although inept, appeal of the underlying judgment. We turn now to the merits.

## II. Summary Judgment

### A. Standard of Review

A district court may render summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing the district court's decision, we apply the same standard, viewing the record and inferences from the facts in the light most favorable to the nonmovant. *GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711, 714 (5th Cir.1985).

The district court in this case rendered summary judgment on the ground that the earlier Texas state court summary judgment barred the pending federal suit under the doctrine of res judicata, or claim preclusion.[2] In determining whether res judicata bars Hogue's federal claims as a matter of law, this Court must give the state court judgment the same preclusive effect as would be given that judgment under Texas law. *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). We now turn to an analysis of Hogue's claims under Texas res judicata principles.

### B. Texas Res Judicata Principles

Under Texas law, an existing final judgment rendered upon the merits[3] by a court of competent jurisdiction is conclusive of the rights of the parties in all other actions on the points at issue and adjudicated in the first suit. *Flores v. Edinburg Consol. Independent School Dist.,* 741 F.2d 773, 776 (5th Cir.1984) (citing *Abbott Laboratories v. Gravis,* 470 S.W.2d 639, 642 (Tex.1971)), *reh'g denied,* 747 F.2d 1465. Further, the rule of res judicata bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, *might have been tried* in a former action as well as those that were actually tried. *Id.* The preclusion of issues not actually litigated or decided in the prior action thus turns on whether the causes of action in the successive suits are the same. *See Gilbert v. Fireside Enter-*

**2.** The district court followed the conventional terminology, describing the preclusive effect of the prior state judgment as "res judicata." More modern terminology breaks the doctrine into two preclusion concepts: "issue preclusion" and "claim preclusion." *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). The rule of issue preclusion, sometimes referred to as collateral estoppel, bars relitigation by a party to a previous action of issues that were actually litigated and decided in that previous action. *See Restatement (Second) of Judgments,* Introductory Note to ch. 1 (1982). Claim preclusion, on the other hand, is generally used to describe the effect of a prior judgment on all legal theories and claims that were never litigat-

ed but that should have been advanced in connection with a particular cause of action. *Id.*

For purposes of clarity, we shall use the term "res judicata" to refer only to claim preclusion; this is consistent with the general usage of the Texas courts. *See, e.g., Gilbert v. Fireside Enterprises, Inc.,* 611 S.W.2d 869, 871 (Tex.Civ.App.—Dallas 1980, no writ).

**3.** The rule of conclusiveness of judgments applies to all judicial determinations, whether made in legal or equitable actions, or in summary or special proceedings. *Lasater v. Maher,* 330 S.W.2d 481, 483 (Tex.Civ.App.—San Antonio 1959, no writ). Therefore, and neither party contests this, the state summary judgment is entitled to full preclusive effect.

*prises, Inc.*, 611 S.W.2d 869, 871 (Tex.Civ. App.—Dallas 1980, no writ).

### 1. Same cause of action

 Texas courts have not adopted a fixed view of what constitutes a particular "cause of action." In *Abbott Laboratories v. Gravis*, 470 S.W.2d 639, 641–42 (Tex. 1971), the Texas Supreme Court held that a suit for products liability was barred by a prior suit based on negligence because both suits involved a tort action resulting from the furnishing of the same drug for the same operation on the same person. However, in *Griffin v. Holiday Inns of America*, 496 S.W.2d 535, 537–38 (Tex.1973), the Texas Supreme Court, citing *Abbott* for general res judicata principles, held that a prior suit based on breach of contract did not bar a later suit based on the theory of *quantum meruit* between the same parties concerning the same transaction. Although these leading cases may appear to be inconsistent, we have previously sought to reconcile them, noting that the plaintiff's claims in *Abbott* differed only in the legal theories offered, whereas the plaintiff's claims in *Griffin* differed in both the legal theories and the factual bases—the plaintiff could recover on *quantum meruit* even if he conceded the lack of a contract or partial failure of performance. *See Flores*, 741 F.2d at 776 (construing *Griffin* and *Abbott*).[4] Both *Abbott* and *Griffin* are still considered to be good law. *See Texas Water Rights Commission v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex. 1979).

These Texas Supreme Court cases have raised but not answered the question of what constitutes a different cause of action. Hogue argues that different claims represent different causes of action if different evidence is necessary to sustain them. From that premise, Hogue asserts

---

**4.** However, it is unclear just how this attempted reconciliation takes account of the fact that in the first *Abbott* suit negligence would have to be found as a fact, while no such factual finding would be required in the second suit.

**5.** The *Restatement (Second) of Judgments* § 25 rejects essentially the same argument, stating that res judicata

that his ADEA claim represents an entirely different cause of action from his state wrongful discharge claim because each claim would require different elements of proof. We reject this overly narrow construction.[5] In a remarkably similar case, this Court has previously held that an employee's state common-law action for wrongful discharge and his federal action based on age discrimination were successive actions arising out of the same transaction; thus, the federal action was properly dismissed on the basis of res judicata. *Langston v. Insurance Company of North America*, 827 F.2d 1044, 1048–49 (5th Cir.1987). The *Langston* court noted that the age discrimination claim advanced a different theory from the state wrongful discharge claim. We nevertheless found the plaintiff to have alleged only a single cause of action, and held that res judicata barred all claims that were or could have been brought in the original suit. *Id.* at 1047–48.

Although *Langston* applied Mississippi law, its analysis parallels Texas law. As noted by the *Flores* court, under Texas law

" 'a different cause of action' is one that proceeds not only on a sufficiently different legal theory but also on a sufficiently different factual footing as not to require the trial of facts material to the former suit; that is, an action that can be maintained even if all the disputed factual issues raised in the plaintiff's original complaint are conceded in the defendant's favor. . . .

" . . . .

" . . . . A different cause of action is not merely a different theory of recovery; it should differ in 'the theories of recovery, *the operative facts*, and the measure of recovery.' " *Flores*, 741 F.2d at 777–79 (citing *Dobbs v. Navarro*, 506 S.W.2d

"applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action
"(1) To present evidence or grounds or theories of the case not presented in the first action, or
"(2) To seek remedies or forms of relief not demanded in the first action."

671, 673 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ) (emphasis added)). In Hogue's case, the district court found the key operative fact in both actions to be whether the City *wrongfully* terminated Hogue. The district court further found that the "material facts are the same, as is the question of the City's intent in discharging Hogue." Thus, although Hogue's ADEA claim may technically be a different theory of recovery, we find it represents the same cause of action because, like the state wrongful discharge claim, it ultimately depends on whether the City was justified in discharging Hogue.

We conclude that a Texas court would find this case similar to *Abbott, supra.* Although Hogue shifts his legal theory from his state suit to his federal suit—"refusal to set speed traps" vs. "age discrimination"—the crucial factual issue raised by Hogue's allegations in both actions is the one alleged wrongful discharge by the City based on an unlawful motive. The parties to this suit are identical to those in the state suit; further, both the ADEA claim and the wrongful discharge claim involve the same subject matter, both arise out of precisely the same set of facts and both involve the violation of the same duty, namely not to discharge for an unlawful motive. As in *Abbott*, the only significant change between forums is the theory of recovery—here, the particular alleged unlawful motive of the City behind Hogue's termination. Thus, the injury Hogue has complained of was a unitary wrong, representing only a single cause of action encompassing several possible theories respecting the City's particular unlawful subjective motive for terminating Hogue. The state court rendered a final judgment adverse to Hogue on this cause of action, and we must give effect to that judgment.

Our conclusion is not changed by the more recent case of *Gilbert v. Fireside Enterprises, Inc.*, 611 S.W.2d 869, 875–76 (Tex.Civ.App.—Dallas 1980, no writ), in which the Texas Court of Appeals reviewed several possible ways that "cause of action" might be defined for res judicata purposes, noting the apparent inconsistency in the *Abbott* and *Griffin* holdings, and stat-ing that "[f]rom the foregoing analysis of [Texas] supreme court opinions, it is impossible to reconcile these cases under the view that they all adhere to the pragmatic concept of a cause of action." The *Gilbert* court ultimately concluded that reconciliation demanded a functional case-by-case approach, which would focus on effectuation of the policy considerations underlying the doctrine of res judicata: "promotion of judicial economy, prevention of vexatious litigation, prevention of double recovery, and promotion of the stability of decisions." *Id.* at 876–77. Although we have previously expressed doubt as to whether *Gilbert* accurately states the Texas law, *Flores*, 741 F.2d at 778, we conclude that even under such an approach res judicata is appropriately applied in the case before us. Hogue has alleged a single wrong—one wrongful discharge—and the policies underlying the doctrine of res judicata surely would be offended if Hogue were allowed to bring a parade of suits each raising a new theory on the motive for his firing.

### 2. Substance/procedure distinction

■ Hogue further argues that res judicata should not apply because his state suit primarily sought procedural relief in the form of a pretermination hearing, and that he saved his substantive claims for the federal forum. In support of this substance/procedure distinction, Hogue cites *Maher v. City of New Orleans*, 516 F.2d 1051 (5th Cir.1975) (applying Louisiana law and finding federal constitutional claim not barred by earlier state statutory claim), *cert. denied*, 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976), and *Morgan v. City of Rawlins*, 792 F.2d 975 (10th Cir.1986) (applying Wyoming law and finding section 1983 claim not barred by earlier state suit alleging due process violation). We need not address whether such a distinction exists under Texas law because we find Hogue's argument not viable in this case. Contrary to Hogue's assertions, he did not seek merely procedural relief in the state forum. His state petition alleged two causes of action, the first being a substan-

tive claim for "wrongful discharge."[6] As Hogue concedes, "a judgment is conclusive upon the issues tendered by the plaintiff's complaint." *Moore v. Snowball*, 98 Tex. 16, 81 S.W. 5, 8 (1904). Given the broad construction that Texas courts afford pleadings,[7] Hogue's state claim for "wrongful discharge" certainly would not exclude Hogue's claim for age discrimination under the ADEA.

### 3. Simultaneous suits

■ Finally, we reject Hogue's argument that filing suits simultaneously merits different preclusive treatment from filing suits successively. Hogue asserts that he did not lack diligence in pursuing his ADEA claim; he merely chose to pursue it in federal rather than state court. Although the Texas courts have apparently not addressed this argument, we conclude that, given the Texas Supreme Court's previous reliance on the *Restatement of Judgments*,[8] a Texas court hearing this case would adopt reasoning similar to the *Restatement (Second) of Judgments* § 14, comment a, which states:

> "In order that a final judgment shall be given res judicata effect in a pending action, it is not required that the judgment shall have been rendered before that action was commenced. Nor is a judgment, otherwise entitled to res judicata effect in a pending action, to be deprived of such effect by the fact that the action in which it was rendered was

commenced later than the pending action. It is merely required that rendition of the final judgment shall antedate its application as res judicata in the pending action. Thus when two actions are pending which are based on the same claim, or which involve the same issue, it is the final judgment first rendered in one of the actions which becomes conclusive in the other action ... regardless of which action was first brought."

Thus, because a later-filed claim can be preclusive of an earlier-filed claim, simultaneous filing of multiple claims in different forums based on the same cause of action will not avoid the application of res judicata. Additionally, we note that Texas courts disapprove of claim-splitting: "we believe it is well settled that a litigant may not ordinarily split his claim and have two trials on the same alleged breach of duty." *Martin v. Phillips Petroleum Company*, 455 S.W.2d 429, 436 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ).

Further, Hogue's argument logically hurts rather than helps his position. This is not a case in which "a deserving plaintiff has lost the opportunity to bring a meritorious claim because of his failure to negotiate the sometimes treacherous curves of civil procedure." *Schuster v. Martin*, 861 F.2d 1369, 1374 n. 11 (5th Cir.1988), *reh'g denied*, 866 F.2d 1417 (1989). Rather, Hogue was fully aware of all possible claims, which he easily could have joined in a single suit in either forum.[9] Hogue took a

---

**6.** Hogue's original state petition alleged as its "first cause of action" that "by and through the actions of the officials of Royse City, Texas, [Hogue] was wrongfully discharged from his position of Police Chief of Royse City, Texas." The petition further alleged in a *separate paragraph* that Hogue refused to establish speed traps he believed were "contrary to public policy," and that "[a]s a result of such refusal on the part of [Hogue], Officials of Royse City, Texas, voted to discharge [Hogue]."

In a separate, "second cause of action," asserted in a subsequent portion of the state court petition, Hogue complained of the City not "permitting him to represent himself in front of the council to address the allegations and incorrect information which ... served as the basis of his discharge."

**7.** The Texas Supreme Court has stated that

"[i]t is a general rule, so well established as to need no citation of authority, that the petition will be construed as favorably as possible for the pleader. The court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged. Every fact will be supplied that can reasonably be inferred from what is specifically stated." *Gulf, Colorado & Santa Fe Ry. Co. v. Bliss*, 368 S.W.2d 594, 599 (Tex.1963).

**8.** *See, e.g., Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex.1986) (adopting rule of *Restatement (Second) of Judgments* § 13); *Abbott Laboratories v. Gravis*, 470 S.W.2d 639, 642 (Tex. 1971) (citing *Restatement (First) of Judgments*, Introductory Notes to § 41).

**9.** We note that Hogue's ADEA claim could properly be brought in state court, as the ADEA

calculated risk in filing separate suits in what well may have been an attempt to hedge his bets on which forum would be more favorable. Hogue lost that gamble, and cannot now be heard to complain that he has not had his day in court.

### C. Conclusion: Federal Claims Barred

We conclude that a Texas court would find Hogue's federal suit to be barred under the doctrine of res judicata.[10] Therefore, the district court properly rendered summary judgment in favor of the City. Further, because the summary judgment was proper, the district court obviously did not abuse its discretion in refusing to grant Hogue's motion for new trial.

### III. Sanctions

■ In its cross appeal, the City argues that Hogue has maintained a frivolous suit that has served only to harass the City. Accordingly, the City seeks review of the district court's denial of sanctions under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927.

This Court has previously held that Rule 11 applies only to the *signing* of pleadings, motions, or other papers. *See Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (en banc). Review of a denial of Rule 11 sanctions is governed by an abuse of discretion standard. *Cor-*

*pus Christi Taxpayer's Ass'n v. Corpus Christi, Texas*, 858 F.2d 973, 977 (5th Cir. 1988), *cert. denied*, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989). The district court expressly found that, although Hogue's attorney improperly split Hogue's wrongful discharge claim, he did not sign the original pleadings in violation of the requirement of Rule 11 of a "reasonable inquiry" as to whether the documents were "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11. Apparently, the district court concluded that the federal claim did not become baseless until after the state summary judgment. We are not persuaded that the district court abused its discretion in denying Rule 11 sanctions.

■ An unsuccessful claim is not necessarily sanctionable. For sanctions under 28 U.S.C. § 1927 to be appropriate, an attorney must have unreasonably and vexatiously multiplied the proceedings; there must be evidence of recklessness, bad faith, or improper motive. *Manax v. McNamara*, 842 F.2d 808, 814 (5th Cir. 1988). The district court held that Hogue's persistence in pursuing his federal claim did not rise to the required level of misconduct. We agree.

---

allows claims to be brought in "any court of competent jurisdiction." 29 U.S.C. § 626(c)(1).

**10.** As an alternative theory, Hogue argues that even if res judicata would theoretically bar his federal claim, the City has consented to the separate suits and has thus waived this defense. In support of this proposition, Hogue cites *Funkhouser v. Hurricane Fence Co.*, 524 S.W.2d 780, 783 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). In *Funkhouser*, the court held that it was error to sustain the defendant's plea of res judicata because the defendant had waived that right by failing to "file in either action a plea of another cause pending, or to move for consolidation...." *Id.* at 783. Further, because res judicata is an affirmative defense, Fed.R.Civ.P. 8(c), Hogue is correct that the City may waive it by failing to raise it. We reject Hogue's contention that the City should be estopped to raise the defense of res judicata. The City did complain about the multiple suits. The City contends that it filed a plea in abatement in its original answer in state court, asking the state court to abate the state

action until it could be consolidated with the federal action. Although the federal record does not reflect the state pleadings, we note that Hogue has failed to deny this. Further, the record does show that the City raised this matter in a status report to the federal district court on August 29, 1988, and asked for consolidation. Hogue has the burden to establish consent or estoppel, and there is no summary judgment evidence sufficient to raise an issue in this respect.

We also conclude that the City has not waived the defense of res judicata. In its first amended answer, the City asserted that Hogue's federal claim is barred by the doctrines of res judicata and, alternatively, collateral estoppel. This amended answer was filed July 25, 1989, approximately one week before the City moved for summary judgment and less than three months after the state judgment. The City has clearly preserved its rights to assert the doctrine of res judicata.

We next turn to the City's motion in this Court seeking damages and costs on appeal under Fed.R.App.P. 38. The City alleges that Hogue has failed to properly invoke the jurisdiction of this Court, yet continues to prosecute this appeal, and that the appeal itself is frivolous. We find that Hogue's appeal is not so without merit as to constitute a frivolous appeal justifying an award of damages to the City. Accordingly, we deny the City's motion for damages under Fed.R.App.P. 38.

## Conclusion

For the reasons stated, the judgment of the district court is AFFIRMED, and the City's request on its cross appeal for damages is DENIED.

AFFIRMED.