**UNITED STATES of America ex rel. Dilip Kumar PAUL, Plaintiff,**

v.

**PARSONS, BRINKERHOFF, QUADE & DOUGLAS, INC., and P.B.–K.B.B., Defendant.**

Civ. A. Nos. H–92–2429, H–92–2792.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 1, 1994.

Dilip Kumar Paul, pro se.

Anson D. Phipps, Houston, TX, for Parsons Brinkerhoff Quade & Douglas and PB–KBB Inc.

Frederick Robinson, Fulbright & Jaworski, Washington, DC, for Battelle Memorial Institute.

Michael F. Hertz, Dept. of Justice, Civ. Div., Washington, DC, Joe Mirsky, U.S. Attys. Office, Houston, TX, for U.S.

## ORDER

HITTNER, District Judge.

■  Pending before the Court is the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Renewal of Request for Sanctions filed by defendants Parsons, Brinkerhoff, Quade & Douglas, Inc. ("PBQ & D") and P.B.–K.B.B. ("PB–KBB"). Having considered the motion, submissions, and the applicable law, the Court determines that the motion to dismiss should be granted and request for sanctions denied. The Court further determines that defendant Battelle Memorial Institute ("BMI") should be dismissed *sua sponte* for the same reasons stated herein.[1]

Plaintiff Dilip Kumar Paul ("Paul") initiated this cause of action pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730, et seq., against PBQ & D, and PB–KBB. Although the False Claims Act provides the United States Government the opportunity to intervene in a qui tam suit brought under the Act, the United States elected not to intervene in this case. *See* Document # 15. In the complaint, Paul alleges that the defendants "knowingly present[ed], or cause[d] to be presented, to an officer or employee of the Government ... a

---

1. A district court may dismiss a case upon it own motion. *Colle v. Brazos County,* 981 F.2d 237, 242–43 (5th Cir.1993).

false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). A similar cause of action brought against BMI was consolidated with the instant case.

Paul was first employed by PB–KBB, an engineering firm, in June 1981. In June 1982 PB–KBB and PBQ & D formed a joint venture ("PB/PB–KBB") to function as a subcontractor to BMI. Since 1978 BMI has been responsible for the management of the United States Department of Energy's ("DOE") National Waste Terminal Storage Program. PB/PB–KBB was employed by BMI to design an exploratory shaft for a nuclear waste storage project for the DOE. On October 7, 1982 the DOE approved the subcontract and on November 23, 1985, BMI assigned the subcontract to the DOE. As a result of the assignment, PB/PB–KBB submitted all of its claims for payment directly to the DOE. It is the submission of these claims for payment by PB/PB–KBB to DOE that Paul alleges were fraudulent and form the basis of his False Claims Act cause of action.

When the joint venture was formed in June 1982, Paul was selected to serve as a mining engineer on the project. Paul was instructed by PB–KBB to perform a trade-off ventilation study. *Paul v. P.B.–K.B.B., Inc.*, 801 S.W.2d 229 (Tex.App.—Houston [14th Dist.] 1990, writ denied).[2] By mid-July 1982, Paul had not completed the trade-off study and was transferred to the "interstructure" division of PB–KBB. During the first part of August 1982, Paul was discharged.

Following his dismissal, Paul filed suit against PB–KBB in Texas state court alleging that he was wrongfully discharged for his unwillingness to commit an illegal act. *Id.*[3] Paul claimed that "the preliminary study called for one shaft rather than two and that [the preliminary study] design 'could've [sic] killed people.'" *Id.* Paul argued that he was fired for his objections to the project. *Id.* After a jury verdict for Paul's employer was affirmed by the Texas Court of Appeals, Paul filed this complaint.

PBQ & D and PB–KBB contend that this case should be dismissed on the following bases: (1) res judicata; (2) the lack of federal court jurisdiction; (3) the failure of Paul to allege "fraud" and "guilty intent" under the False Claims Act; (4) the failure of Paul to state a cause of action for retaliation under the False Claims Act; and (5) the expiration of the statute of limitations. The Court finds that because Paul could have raised the False Claims Act allegations contained in the complaint when he filed the prior state action, the principle of res judicata supports dismissal of his complaint in this action.

■ When a decision is rendered on the merits of a case by a court of competent jurisdiction, the judgment is conclusive for the parties and their privies "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which *might have been offered* for that purpose." *Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983) (emphasis added).

As the prior lawsuit was brought in Texas state court, this Court will give full faith and credit to the state court judgment pursuant to 28 U.S.C. § 1738, and will apply Texas law in its evaluation of the effect res judicata has on the complaint. *Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1252 (5th Cir.1991).

■ In order for res judicata to apply, four requirements must be met: (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *Eubanks v. F.D.I.C.*, 977 F.2d 166, 169 (5th Cir.1992). In this case, the second and third requirements have been met as the prior lawsuit was adjudicated by the state court and affirmed by the Texas Court of Appeals. *See Paul*, 801 S.W.2d at 229.

The first and fourth requirements for the application of res judicata, that "the parties ... be identical in both suits," and that "the

---

2. This case refers to a state court suit filed by Paul against PB-KBB.

3. Paul has filed two other causes of action against PB-KBB. *See* Document # 30 at 3–4.

same cause of action ... be involved in both cases," are the two issues for consideration in review of the defendants' motion to dismiss. *Eubanks,* 977 F.2d at 169.

Pursuant to Texas law, the first requirement for the application of res judicata to bar a subsequent cause of action, the "identity of parties" test, does not demand strict identity. Rather, parties in the subsequent action are considered "identical" to parties in the previous action if the nonparties are in privity with the earlier parties. *Getty Oil v. Insurance Co. of N. America,* 845 S.W.2d 794, 800 (Tex.1992) (stating that there is no general definition of privity that can be automatically applied in all res judicata cases; the circumstances of each case must be examined). Having examined the relationship between PBQ & D and PB–KBB, this Court finds the requisite privity to bar this complaint. In addition, the Court finds privity between BMI, the general contractor, and PBQ & D and PB–KBB, the subcontractors.

PBQ & D has asserted two related grounds to support its privity argument with PB–KBB. First, PBQ & D argues that its liability is derivative of PB–KBB's, and therefore the False Claims Act cause of action against PBQ & D should be barred. PBQ & D cites Texas law which holds that "where the rights and liabilities of a party are derivative, a judgment binding a party from whom the rights or liabilities are derived *may* be set up as a bar in the second suit." *Lemon v. Spann,* 633 S.W.2d 568, 570 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.) (emphasis added).

PBQ & D's second argument to establish privity centers on the fact that PBQ & D was one of the joint venturers along with PB–KBB, to which BMI subcontracted the design of the exploratory shaft facility. The gravamen of Paul's complaint is that PBQ & D and PB–KBB acted together to defraud the government. Paul continually refers to PBQ & D, BMI, and PB–KBB simply as "defendants" when alleging wrongdoing. Paul's allegations against the defendants are virtually identical. Thus, PBQ & D maintains that privity exists between the defendants and res judicata bars Paul's complaint.

PBQ & D also claims that because it is joined as a defendant with PB–KBB in the complaint, it is in a vicarious relationship with PB–KBB. In situations of vicarious liability a judgment for one of the parties in the vicarious relationship bars a later action against the other. Thus, PBQ & D maintains that Paul's complaint against it should be dismissed as a result of PB–KBB's success in the state court action. *Soto v. Phillips,* 836 S.W.2d 266, 269 (Tex.App.—San Antonio 1992, writ denied) (citing Restatement (Second) of Judgments § 51(1) (1982)). As a general contractor, BMI is also in a vicarious liability relationship with its subcontractor, PB–KBB. *See e.g., United States v. Blair,* 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039 (1944).

There are two exceptions to the rule that bar an unsuccessful plaintiff from reasserting a claim against a subsequent defendant alleged to be vicariously liable to the original defendant. Such a claim may not be reasserted unless: (1) the claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or (2) the judgment in the first action was based on a defense that was *personal* to the defendant in the first action. Restatement (Second) of Judgments § 51(1) (1982) (emphasis added). In this case, the complaint is based upon Paul's allegation that PB/PB–KBB and BMI submitted "a false or fraudulent claim for payment or approval [to the DOE]." 31 U.S.C. § 3729(a)(1). Paul alleged in the prior lawsuit that his certifying design plans for the project, which he believed were dangerous, would have constituted a violation of § 22.05 of the Texas Penal Code, which proscribes "reckless conduct." Paul alleges that his refusal to certify the plans resulted in his termination. In addition, if Paul would have certified the project design, he would have played a role in the submission of the allegedly false claim to the DOE. Given the similarity between the two claims, the grounds for the complaint in this case could have been asserted in the first action.

The second exception also does not apply. The concept of a "personal defense" is ad-

dressed by the Texas Business and Commercial Code in its explanation of the rights of the holder in due course of a negotiable instrument. A holder in due course may take an instrument free from all defenses of any party to the instrument with whom the holder has not dealt, except personal defenses. Tex.Bus. & Comm.Code § 3.305 (1967).[4] Because PB–KBB's defense to the wrongful discharge action was not a personal defense, the second exception does not apply.

█ Res judicata operates on the principle that any cause of action which arises out of the same facts should, if practicable, be litigated in the same lawsuit. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992). A different cause of action has been defined by Texas courts as "one that proceeds not only on a sufficiently different legal theory but also on a sufficiently different factual footing." *Hogue*, 939 F.2d at 1253. To be considered "different," the cause of action must differ in the theories of recovery, the operative facts, and the measure of recovery. *Id.*

In examining the above three factors, Texas courts have utilized the transactional approach to claim preclusion. *Barr*, 837 F.2d at 631. The transactional approach "provides that a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose." *Id.* In analyzing the transactional approach, factors to consider are: (1) whether the facts are related in time, space, origin, or motivation; (2) whether they form a convenient trial unit, and (3) whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage. *Id.* (quoting Restatement of Judgments § 24(2)).

In this case, the complaint arose from the same operative facts that gave rise to the prior lawsuit. The claims in Paul's complaint could have been adjudicated with the prior lawsuit, forming a convenient trial unit. As

aforementioned, Paul alleged in the prior lawsuit that PB–KBB was engaged in illegal activities and his failure to participate in these activities led to his discharge. Paul alleges that PBQ & D and BMI participated with PB–KBB in the illegal acts. Although the complaint asserts a new theory and measure of recovery, the alleged filing of false or fraudulent claims, the operative facts are the same as those in the prior lawsuit.

The second factor of the transactional approach, whether the two claims could have formed a "convenient trial unit," is a jurisdictional question. Whether the state court had jurisdiction over the federal False Claim Act claims is a question of first impression in this Circuit. After a thorough review of other jurisdictions, it appears that only one other court has decided the question of whether there is exclusive federal jurisdiction over cases brought pursuant to the False Claims Act. In *United States ex rel. Hartigan v. Palumbo Bros., Inc.*,[5] the Court held that there is concurrent jurisdiction over False Claims Act cases.

█ In *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990), the Supreme Court discussed concurrent jurisdiction in holding that federal civil RICO suits could be brought in state court. The Court recognized that it has "consistently held that state courts have inherent authority and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Id.* at 460, 110 S.Ct. at 795. State courts are courts of general jurisdiction. When a federal statute intends that claims arising under it be litigated in a specific jurisdiction, the statute will explicitly state that suit may be brought 'only' in federal court, or that the jurisdiction mentioned by the statute shall be "exclusive." *Id.* at 470, 110 S.Ct. at 801 (Scalia, J. concurring). If exclusive jurisdiction is neither express nor implied by the statute, state courts will have

---

4. The Texas Business and Commercial Code defines the five personal defenses as: (1) infancy ...; and (2) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; ... (3) ... misrepresentation [that] has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its

character or its essential terms; ... (4) discharge in insolvency proceedings; and (5) any other discharge of which the holder has notice when he takes the instrument. TEX.BUS. & COMM. CODE § 3.305 (1967).

5. 797 F.Supp. 624 (N.D.Ill.1992).

concurrent jurisdiction. *Claflin v. House-man,* 93 U.S. 130, 136, 23 L.Ed. 833 (1876).

■ The False Claims Act states that an action arising under it "may" be brought in federal court. 31 U.S.C. § 3732 (1986). Thus, pursuant to the language of the statute, there is concurrent jurisdiction between the federal and state courts. *See Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 507, 82 S.Ct. 519, 522, 7 L.Ed.2d 483 (1962).

Finally, the third element of the transactional approach to claim preclusion states that future claims will be barred if it is reasonable to presume that the parties would expect the two actions to be treated together in the original case. In as much as the facts and claims in the state and federal cases are almost identical, it is apparent that the two cases could have been tried together. *See Ocean Insurance Co. v. Fields,* 18 F.Cas. 532 (C.D.D.Mass.1841) (No. 10,406). Therefore, based on the foregoing, the Court hereby

ORDERS that the Motion to Dismiss is GRANTED and the request for Sanctions is DENIED. It is further ORDERED that the complaint against BMI is DISMISSED. All relief not specifically granted herein is DENIED.